UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20327-KMM

UNITED STATES OF AMERICA,

v.

LIVER GRUEZO,

         Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendant Liver Gruezo's Motion to Dismiss for Lack of Jurisdiction (ECF No. 51). The Motion was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge (ECF No. 21). The Government filed a Response in Opposition (ECF No. 62) and Defendant filed a Reply (ECF No. 63). The Court held an evidentiary hearing on Defendant's Motion on December 8, 2021. Upon consideration of the Motion, Response, Reply, review of the record, and the issues discussed at the hearing, the undersigned respectfully recommends that the Motion be **DENIED**, as follows.

### I.   BACKGROUND

This case arises from an indictment alleging violations of Title 46, the Maritime Drug Law Enforcement Act ("MDLEA").[1] Defendant Liver Gruezo has been charged under Title 46, United States Code, §70506(b), for conspiracy to possess with intent to distribute cocaine while onboard a vessel subject to the jurisdiction of the United States and under §70506(a) for possession with

---

[1] The MDLEA, 46 U.S.C. §§ 70501-70508, "establishes the framework for the United States to prosecute citizens of any country for drug crimes committed in international waters." *United States v. Guerro*, 789 F. App'x 742, 744 (11th Cir. 2019).

1

the intent to distribute cocaine while onboard such a vessel (ECF No. 3). In his Motion, Defendant challenges the factual basis for the Court's subject matter jurisdiction, specifically, whether the master indeed failed to make a claim of nationality for the vessel in response to a request by law enforcement. The Government avers that subject matter is established by the fact that co-defendant Wilmar Estupinan-Padilla ("Estupinan"), once identified as the vessel's master, was asked if he would like to make a claim of nationality for the vessel and failed to do so (ECF No. 62 at 1). In his Reply, Defendant proffers that he would testify that no officer in fact asked that question of Estupinan, refuting the Government's factual basis for subject matter jurisdiction.

At the evidentiary hearing held December 8, 2021, Defendant conceded his argument and instead contends that (1) the vessel's master affirmatively made a claim of Colombian nationality for the vessel and (2) the Coast Guard failed to ask the master to make a claim of registry in accordance with 46 U.S.C. § 70502(d)(1)(B).

## II. EVIDENCE PRESENTED

The sole witness at the hearing was Coast Guard Petty Officer Second Class Diego Rivera ("PO Rivera"). On direct examination, PO Rivera testified that he is currently a reservist with the Coast Guard and previously served on active-duty from August 2015 until August 2021. In May 2021, PO Rivera was assigned to the Coast Guard Cutter Active as a member of a law enforcement detachment. His responsibility as a petty officer was to deploy, conduct law enforcement boardings—particularly counter-narcotics boardings—and enforce the MDLEA. As a native Spanish speaker, PO Rivera also served as a Spanish interpreter. PO Rivera testified that he completed eight deployments and participated in at least twelve interdictions.

On May 5, 2021, the date of the instant offenses, PO Rivera was aboard the Active and was dispatched to interdict a vessel of interest in international waters as a member of the primary interdiction team. PO Rivera described the subject vessel as a "low-profile vessel", meaning most

of the vessel's construction was beneath the water, specifically outfitted for smuggling narcotics. PO Rivera testified that the vessel had no flag, markings, numbers, homeport painted on the side, name on the hull, painted-on markings, registration documents within the vessel, or any other indicia of nationality.

The primary interdiction team achieved control of the vessel and removed three individuals on board: Defendant and his two co-defendants, Estupinan and Yiminson Caicedo Vallecilla ("Caicedo") (collectively "Defendants"). PO Rivera stated that as part of the law enforcement package process, the primary interdiction team photographed the Defendants and PO Rivera asked them a series of "right-of-visit" questions. PO Rivera testified that he translated the right-of-visit questions to Defendants from the Victor Report, a form used by the Coast Guard to conduct right-of-visit questioning. PO Rivera relayed the translated answers to another member of the Coast Guard boarding team, Officer Santiago, who sat next to PO Rivera and contemporaneously completed the Victor Report, thus memorializing the questioning (*see* ECF No. 82-5).

Specifically, PO Rivera asked Defendants to identify the master or person in charge of the vessel. Estupinan claimed to be the master and PO Rivera asked him the two follow-up questions listed on the Victor Report. PO Rivera testified that he asked Estupinan whether he claimed nationality for the vessel and whether the vessel had a nationality, to which Estupinan responded "no" to both questions. Defendant and Caicedo were also present during the questioning and did not say anything nor did they dispute Estupinan's claim that the vessel did not have a nationality.

As part of standard operating procedure, the primary boarding team also completed an original "Alpha Report" (*see* ECF No. 77 at 2). PO Rivera described the Alpha Report as a separate Coast Guard form from the Victor Report that is both broader and contains more information. PO Rivera explained that during the boarding, he and another member of the primary interdiction team used a grease pen to complete this original version of the Alpha Report. Another individual, whom

3

PO Rivera could not recall, then transcribed the information that was written in grease pen to a new, "cleaned up," more legible copy. PO Rivera did not know when this occurred.

The Alpha Report indicates the date of the interdiction, that the vessel was picked up by a marine patrol aircraft, that it was a closed low-profile vessel or "LPV," and that there was no vessel name.[2] In addition, "none" is written for the vessel's registry number and, in question number six, it indicates a nationality of Colombian. PO Rivera testified, however, that the vessel did not have a nationality of Colombian. PO Rivera also did not know why the particular Alpha Report shown at the hearing contained incorrect information regarding the nationality of the vessel.[3] PO Rivera described the answer indicating Colombian nationality as a "hiccup."

PO Rivera stated that the information obtained from Defendants was passed along to the Active and the District 11 Command Center, the latter of which informed the primary interdiction team that the vessel was to be treated as a vessel without nationality, within the Coast Guard's jurisdiction, and that they had the authority to conduct the law enforcement boarding.

### III. DISCUSSION AND ANALYSIS

#### a. Affirmative Claim of Colombian Nationality

The MDLEA defines a vessel without nationality to include any of the following: (1) "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed"; (2) "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel"; and (3) "a vessel aboard which the master or individual in charge makes a claim of registry and for which the

---

[2] The cleaned up Alpha Report was produced by the Government in response to the standing discovery order.
[3] PO Rivera initially indicated, in response to the Court's questions, that he recognized the Alpha Report but later clarified that he did not fill out this particular Report and testified that it contained inaccurate information.

claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1).

The MDLEA provides three exclusive ways to make a claim of nationality or registry for a vessel: (1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas; (2) flying its nation's ensign or flag; or (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel. 46 U.S.C. § 70502(e); *see also United States v. Obando*, 891 F.3d 929, 933 (11th Cir. 2018) ("[T]he Act provides three exclusive methods for the master or individual in charge to make a 'claim.'"). Statutorily, an officer of the United States must request a claim of nationality or registry and the master or individual in charge must fail to answer that request before a vessel can be deemed stateless under § 70502(d)(1)(B). *See United States v. Prado*, 933 F.3d 121, 130 (2d Cir. 2019) ("It is only if 'on request' of a duly authorized officer, the master 'fails to make a claim of nationality or registry,' that statelessness is established." (alteration adopted)); *cf. Obando*, 891 F.3d at 931 ("Indeed, when asked, [the master] told the guardsmen that 'he did not know' the vessel's nationality.").

Defendant contends that Estupinan affirmatively made a claim of Colombian nationality for the vessel and thus the vessel was not stateless. Defense counsel highlights question number six on the Alpha Report which asks for "Nationality" (ECF No. 77 at 2). The answer on the form shows "COL" (*id.*). Defendant argues that this answer on Alpha Report memorializes the master's claim of Colombian nationality of the vessel. Relying on PO Rivera's testimony, the Government argues that the only Spanish- speaking law enforcement officer to have taken a statement from the vessel's master contradicts Defendant's theory and speculates that whoever transcribed the answers onto this Alpha Report made an error; counsel further speculates that the notation here mistakenly refers to the nationality of the vessel master (Estupinan). The Government references

5

line twenty-three of the Alpha Report which calls for the master's name, date of birth, and nationality. The spaces for master's name and date of birth are completed, yet the nationality is not, which the Government claims supports their theory that the individual completing the form confused the master's nationality with the vessel's nationality.

The Court credits the testimony of PO Rivera that Estupinan did not make a claim of nationality for the vessel when asked. PO Rivera asked questions as they appear on the Victor Report, specifically, "do you claim nationality for the vessel?" and "does this vessel have a nationality?" PO Rivera indicated that Estupinan answered "no" for both. PO Rivera testified that the answers marked on the Victor Report were contemporaneously captured by Officer Santiago, who sat directly next to PO Rivera during the right-of-visit questioning of Estupinan.

Though PO Rivera's testimony appears to be contradicted by the Alpha Report, its author was unidentified and limited information was available to explain the circumstances of its execution. PO Rivera testified that he did not know who completed the particular Alpha Report at issue nor when this form was completed. He stated that he did not know why the individual who completed this form listed the vessel's nationality as Colombian. I afford little weight to the Alpha Report, recognizing its potential for impeachment, but credit PO Rivera's testimony.

    b. **Claim of Registry**

Defendant also argued that Estupinan was not asked to make a claim of registry (as compared to "nationality") for the vessel. "[T]he term 'vessel without nationality' includes a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality <u>or registry</u> for that vessel." 46 U.S.C. § 70502(d)(1)(B) (emphasis added). PO Rivera testified that he translated the questions exactly as written on the Victor Report to Estupinan. PO Rivera asked, "do you claim nationality for the vessel" and "does this vessel have a nationality?"

6

He admits he did not additionally ask Estupinan if he wanted to make a claim of registry for the vessel.

Defendant contends that the Coast Guard Officer's failure to question Estupinan regarding the registry of the vessel is in direct violation of § 70502(d)(1)(B). Citing to the rule of lenity discussed by the Supreme Court in *U.S. v. Shabani*, Defendant argues that any ambiguity in the statute must be decided in favor of the defendant. 513 U.S. 10 (1994). Here, as the statute uses the words "*or* registry," Defendant contends that it should be interpreted as requiring the Coast Guard Officer to ask both: nationality and registry.

The undersigned is not persuaded by Defendant's argument. Like *Shabani*, "[t]he rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute . . . That is not the case here." *Id*. at 17 (internal citations omitted). In this respect, the statute is not ambiguous. The question to be asked by the officer is in the disjunctive, meaning there is a choice between two or more things where only one is possible. Indeed, the undersigned recognizes that a vessel's nationality and registry are different. *See* 46 U.S.C. § 1903(c)(2)(C) ("[T]he claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."). However, § 70502(d)(1)(B) is unambiguously written so that the master must be asked for the vessel's "nationality *or* registry" as in one *or* the other where only one answer will suffice. PO Rivera provided credible testimony that he requested that the vessel's master make a claim of nationality for the vessel, to which Estupinan replied "no." Accordingly, the vessel was appropriately deemed as stateless and is thus subject to the jurisdiction of the United States.

## IV.   RECOMMENDATION

Based on the foregoing, it is the Recommendation of the undersigned that Defendant's Motion (ECF No. 51) be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 23rd day of December, 2021.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable K. Michael Moore
Counsel of Record