UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cr-20327-KMM-3

UNITED STATES OF AMERICA,

v.

WILMAR ESTUPINAN PADILLA, *et al.*,

    Defendant.

_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Liver Gruezo's (3) ("Gruezo") Motion to Dismiss for Lack of Jurisdiction. ("Mot.") (ECF No. 51). The Government filed a response. ("Resp.") (ECF No. 62). Defendant Gruezo filed a reply. ("Reply") (ECF No. 63). The Court referred the matter to the Honorable Lauren F. Louis, United States Magistrate Judge. (ECF No. 28). Magistrate Judge Louis issued a Report and Recommendation, ("R&R") (ECF No. 89), recommending that Defendant Gruezo's Motion be DENIED. *See* R&R at 1. Defendant Gruezo filed Objections to the R&R. ("Objs.") (ECF No. 93).[1] The Government filed a response to Defendant Gruezo's Objections. ("Objs. Resp.") (ECF No. 98). Defendant Gruezo filed a reply to the Government's response. ("Objs. Reply") (ECF No. 101). The matter is now ripe for review. As set forth below, the Court ADOPTS the R&R.

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party

---

[1] Defendant Gruezo has filed an identical copy of his Objections on the docket. (ECF No. 94).

files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

In Defendant Gruezo's Motion, he raises a factual challenge to the Court's subject matter jurisdiction arising from the nationality of the vessel on which he was arrested. *See generally* Mot. In the R&R, Magistrate Judge Louis recommends that Defendant's Motion be DENIED. The Court agrees.

In the R&R, Magistrate Judge Louis sets forth the following background to Defendant Gruezo's arrest and the instant Motion:

> This case arises from an indictment alleging violations of Title 46, the Maritime Drug Law Enforcement Act ("MDLEA"). Defendant Liver Gruezo has been charged under Title 46, United States Code, §70506(b), for conspiracy to possess with intent to distribute cocaine while onboard a vessel subject to the jurisdiction of the United States and under §70506(a) for possession with the intent to distribute cocaine while onboard such a vessel (ECF No. 3). In his Motion, Defendant challenges the factual basis for the Court's subject matter jurisdiction, specifically, whether the master indeed failed to make a claim of nationality for the vessel in response to a request by law enforcement. The Government avers that subject matter is established by the fact that co-defendant Wilmar Estupinan-Padilla ("Estupinan"), once identified as the vessel's master, was asked if he would like to make a claim of nationality for the vessel and failed to do so (ECF No. 62 at 1). In his Reply, Defendant proffers that he would testify that no officer in fact asked that question of Estupinan, refuting the Government's factual basis for subject matter jurisdiction.

R&R at 2.

Magistrate Judge Louis held an evidentiary hearing on December 8, 2021. *Id*. At the hearing, Defendant Gruezo slightly changed his arguments, and principally contended that: "(1) the vessel's master affirmatively made a claim of Colombian nationality for the vessel and (2) the Coast Guard failed to ask the master to make a claim of registry in accordance with 46 U.S.C. § 70502(d)(1)(B)." *Id*. U.S. Coast Guard Petty Officer Second Class Diego Rivera ("PO Rivera")

was the sole witness at the evidentiary hearing. *Id*. Magistrate Judge Louis summarized PO Rivera's testimony as follows. On May 5, 2021, PO Rivera was aboard the *Active*, a U.S. Coast Guard Cutter, which was dispatched to interdict a vessel of interest in international waters. *Id*. "PO Rivera described the subject vessel as a 'low-profile vessel', meaning most of the vessel's construction was beneath the water, specifically outfitted for smuggling narcotics." *Id*. at 2–3. Additionally, PO Rivera testified that the vessel "had no flag, markings, numbers, homeport painted on the side, name on the hull, painted-on markings, registration documents within the vessel, or any other indicia of nationality." *Id*. at 3. The interdiction team gained control of the vessel and removed three individuals—Defendant Gruezo, and his two co-defendants, Wilmar Estupinan Padilla ("Estupinan") and Yiminson Caicedo Vallecilla ("Vallecilla") (collectively, "Defendants"). *Id*.

> Magistrate Judge describes PO Rivera's interactions with Defendants as follows:
>
> PO Rivera asked Defendants to identify the master or person in charge of the vessel. Estupinan claimed to be the master and PO Rivera asked him the two follow-up questions listed on the Victor Report. PO Rivera testified that he asked Estupinan whether he claimed nationality for the vessel and whether the vessel had a nationality, to which Estupinan responded "no" to both questions. Defendant and Caicedo were also present during the questioning and did not say anything nor did they dispute Estupinan's claim that the vessel did not have a nationality.
>
> As part of standard operating procedure, the primary boarding team also completed an original "Alpha Report" (*see* ECF No. 77 at 2). PO Rivera described the Alpha Report as a separate Coast Guard form from the Victor Report that is both broader and contains more information. PO Rivera explained that during the boarding, he and another member of the primary interdiction team used a grease pen to complete this original version of the Alpha Report. Another individual, whom PO Rivera could not recall, then transcribed the information that was written in grease pen to a new, "cleaned up," more legible copy. PO Rivera did not know when this occurred.
>
> The Alpha Report indicates the date of the interdiction, that the vessel was picked up by a marine patrol aircraft, that it was a closed low-profile vessel or "LPV," and that there was no vessel name. In addition, "none" is written for the vessel's registry number and, in question number six, it indicates a nationality of

3

>Colombian. PO Rivera testified, however, that the vessel did not have a nationality of Colombian. PO Rivera also did not know why the particular Alpha Report shown at the hearing contained incorrect information regarding the nationality of the vessel. PO Rivera described the answer indicating Colombian nationality as a "hiccup."
>
>PO Rivera stated that the information obtained from Defendants was passed along to the Active and the District 11 Command Center, the latter of which informed the primary interdiction team that the vessel was to be treated as a vessel without nationality, within the Coast Guard's jurisdiction, and that they had the authority to conduct the law enforcement boarding.

R&R at 4.

In Defendant Gruezo's Motion, he argues that MDLEA jurisdiction does not exist under any of the six grounds set forth in § 70502(c)(1). Mot. at 2–3. Specifically, Defendant Gruezo disputes that he was aboard a vessel "without nationality"—which is a basis for jurisdiction under § 70502(c)(1)(A). *Id*. at 4. Additionally, Defendant Gruezo objects to jurisdiction in the Southern District of Florida because, he argues, the only authorized venue for his prosecution under § 70504(b) would be the Southern District of California, where he first entered the country, or the District of Columbia. *Id*.

In the R&R, Magistrate Judge Louis begins her analysis by noting that the MDLEA defines a "vessel without nationality" to include any of the following:

>(1) "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed"; (2) "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel"; and (3) "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."

R&R at 4–5 (citing 46 U.S.C. § 70502(d)(1)). Additionally, Magistrate Judge Louis notes that the MDLEA provides three exclusive ways to make a claim of nationality or registry of a vessel:

4

>(1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas; (2) flying its nation's ensign or flag; or (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.

R&R at 5 (citing 46 U.S.C. § 70502(e); *United States v. Obando*, 891 F.3d 929, 933 (11th Cir. 2018) ("[T]he Act provides three exclusive methods for the master or individual in charge to make a 'claim.'")). Under § 70502(d)(1)(B), "an officer of the United States must request a claim of nationality or registry and the master or individual in charge must fail to answer that request before a vessel can be deemed stateless." R&R at 5 (citing *United States v. Prado*, 933 F.3d 121, 130 (2d Cir. 2019) ("It is only if 'on request' of a duly authorized officer, the master 'fails to make a claim of nationality or registry,' that statelessness is established." (alteration adopted)); *cf. Obando*, 891 F.3d at 931 ("Indeed, when asked, [the master] told the guardsmen that 'he did not know' the vessel's nationality.")).

Magistrate Judge Louis credited the testimony of PO Rivera that Estupinan did not make a claim of nationality for the vessel when asked, noting that "PO Rivera asked questions as they appear on the Victor Report, specifically, 'do you claim nationality for the vessel?' and 'does this vessel have a nationality?' PO Rivera indicated that Estupinan answered 'no' for both." R&R at 6. Additionally, Magistrate Judge Louis noted that "PO Rivera testified that the answers marked on the Victor Report were contemporaneously captured by Officer Santiago, who sat directly next to PO Rivera during the right-of-visit questioning of Estupinan." *Id*. Magistrate Judge Louis found that although the Alpha Report appears to contradict PO Rivera's testimony because it stated that the vessel was of Colombian nationality, the author of the Alpha Report was "unidentified and limited information was available to explain the circumstances of its execution." *Id*. PO Rivera stated that he did not know who completed the Alpha Report or who listed the vessel's nationality

5

as Colombia. *Id*. For these reasons, Magistrate Judge Louis gave little weight to the Alpha Report. *Id*.

Next, Magistrate Judge Louis credited PO Rivera's testimony that he translated the questions exactly as written on the Victor Report to Estupinan, which included "do you claim nationality for the vessel" and "does this vessel have a nationality?" R&R at 6. Although PO Rivera admittedly did not ask Estupinan if he wanted to make a claim of registry, Magistrate Judge Louis found that his inquiry as to the vessel's nationality satisfy the requirements of § 70502(d)(1)(B)—which Magistrate Judge Louis concluded is "unambiguously written so that the master must be asked for the vessel's 'nationality or registry.'" R&R at 7. In other words, because the statute uses the words "*or* registry," Magistrate Judge Louis held that an officer need not inquire as to both: nationality *and* registry. *Id*. Because Magistrate Judge Louis found the statute to be unambiguous, she also found that the Rule of Lenity does not apply. *Id*. Thus, Magistrate Judge Louis credited PO Rivera's testimony that Estupinan replied "no" when asked if he would like to make a claim of nationality as satisfying the requirements under § 70502(d)(1)(B). *Id*.

For these reasons, Magistrate Judge Louis found that the vessel was appropriately deemed stateless and subject to the jurisdiction of the United States, and therefore recommends that Defendant Gruezo's Motion be denied. *Id*.

Now, in his objections, Defendant Gruezo objects to the weight given by Magistrate Judge Louis to PO Rivera's testimony and the Victor Report, because the Alpha Report reflected that the vessel was Colombian. Objs. at 3–4. Relatedly, Defendant Gruezo raises various objections as to the credibility of PO Rivera's testimony such as that it was "rambling, rife with uncertainties, and lacking in any meaningful detail." *Id*. at 4. Additionally, Defendant Gruezo raises several objections as to whether the requirements of § 70502(d)(1) have been satisfied and whether

6

Defendant Gruezo, and his co-Defendants, were adequately made aware of these requirements before answering questions related to the same. *Id*. at 5–10.

In response, the Government argues that "the sworn and credible testimony of the only witness to interview the master clearly showed at the evidentiary hearing that the captain failed to make a claim of nationality for his vessel." Objs. Resp. at 1. The Government contends that the Alpha Report is an ambiguous document which was created by an unknown individual, who did not interview the captain, at an unknown time. *Id*. at 1–2. The Government points out that the Victor Report, which is known to have been created contemporaneously, correctly reflects that Estupinan said "no" when asked if the vessel had a nationality. *Id*. at 2. The Government also argues that Defendant Gruezo's arguments regarding the meaning of the statute are contrary to common sense, the wording of the statute, and binding Eleventh Circuit precedent. *Id*. at 2, 4–5.

In reply, Defendant Gruezo again argues that the Alpha Report should outweigh the other evidence showing that Estupinan made no claim of nationality. Objs. Reply at 1–2. Defendant Gruezo notes that the Government did not directly address whether PO Rivera was required to ask Estupinan if he wanted to make a claim of "registry," in addition to asking about a claim of "nationality" for the vessel. *Id*. at 3–6.

With respect to a magistrate judge's credibility findings, "a district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007). "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible only when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'" *Id*. (citing *United States. v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)) (emphasis in original removed).

7

In order for the Court to reject Magistrate Judge Louis's credibility finding with respect to PO Rivera, Defendant Gruezo would need to provide an "articulable basis for rejecting the magistrate's original resolution of credibility." *Id*. Having reviewed Defendant Gruezo's objections to Magistrate Judge Louis's credibility findings, Objs. at 3–4, the Court finds that Defendant Gruezo has failed to provide an articulable basis for rejecting Magistrate Judge Louis's original resolution of credibility. Nothing Defendant Gruezo points to rises remotely to the level of the "exceptional circumstance" in which a district court would reject the credibility findings of a magistrate judge. *Amlong*, 500 F.3d at 1250; *Marshall*, 609 F.2d at 155. Moreover, the Court has reviewed the bases upon which Magistrate Judge Louis weighed the evidence and agrees, for the reasons stated in the R&R, that the weight of the evidence shows that Estupinan did not claim a nationality for the vessel. R&R at 4–6.

Insofar as Defendant Gruezo objects to Magistrate Judge Louis's mentioning that the other two defendants remained silent during Estupinan's questioning—Defendant Gruezo has not set forth how this violates Defendant Gruezo's rights under Eleventh Circuit precedent. Objs. at 4–5. To the contrary, Defendant Gruezo concedes that "Eleventh Circuit precedent allows for pre-*Miranda* silence to be used affirmatively by the Government in an evidentiary proceeding." Objs. at 5 (citing *United States v. Cabezas-Montano*, 949 F.3d 567, 584 (11th Cir. 2020)). Moreover, even if it was contrary to Eleventh Circuit precedent, while Magistrate Judge Louis noted their silence in recounting the facts—she did not explicitly credit their silence when weighing the evidence adduced at the hearing. R&R at 4–6. Thus, the Court finds that the very basis of this objection is without merit.

Defendant's objection that the Coast Guard's failure to specifically inform Defendant Gruezo of the implications of failing to claim a nationality of his vessel under 46 U.S.C. §

8

70502(d)(1) constitutes a denial of due process is not properly before the Court in his Objections given that this issue was not presented in his Motion (ECF No. 51) and therefore was not considered in Magistrate Judge Louis's R&R. In fact, Defendant Gruezo's Motion does not even include the phrase: "due process." *See generally* Mot. Moreover, in any event, Defendant Gruezo has cited to no case or statute standing for the proposition that failure to inform an individual of the significance of claiming a vessel's nationality is a denial of due process. *See generally* Objs. Defendant Gruezo cites *United States v. Davis*, 139 S. Ct. 2319 (2019), which is a case that involves the necessity of writing statutes to inform ordinary people of what the law demands of them. *Id*. at 6. This case does not stand for the proposition that Defendant Gruezo would need to be specially informed, such as with *Miranda*-rights, of the implications of failing to claim a nationality for the vessel under § 70502(d)(1). Indeed, Defendant Gruezo appears to explicitly ask the Court to create—for the first time—"protections like those afforded a defendant under *Miranda v. Arizona*, 384 U.S. 436 (1966)" for Title 46. Defendant Gruezo's argument straddles the line between zealous advocacy and outright frivolity. In the absence of any previously recognized constitutional right to be informed of the consequences under § 70502(d)(1) associated with claiming a nationality of a vessel, the Court finds that *Miranda* does not remotely stand for the stated proposition. Thus, even if this objection were properly before the Court, it would be without merit.

Next, Defendant Gruezo objects to Magistrate Judge Louis's finding that "§ 70502(d)(1)(B) is unambiguously written so that the master must be asked for the vessel's 'nationality or registry' as in one or the other where only one answer will suffice." Obj. at 7–10 (quoting R&R at 7). Defendant Gruezo advocates for a strained reading of § 70502(d)(1)(A) and (C)—which relate to circumstances in which the master of a vessel makes a claim of registry—to

9

imply that under § 70502(d)(1)(B), an officer must inquire as to nationality *and* registry. Obj. at 8. The Court agrees with Magistrate Judge Louis that "nationality or registry" is unambiguous in requiring an officer to inquire as to one or the other. R&R at 6–7. The ability of a vessel's master to make a claim of registry under §§ 70502(d)(1)(A) and (C) does not indicate that an officer must ask the master to do so under § 70502(d)(1)(B). Accordingly, the Court agrees with Magistrate Judge Louis that "§ 70502(d)(1)(B) is unambiguously written" and that the Coast Guard satisfied its statutory requirements by requesting Estupinan to make a claim of nationality—which he did not. R&R at 6–7. Defendant Gruezo's objections premised on the Coast Guard's failure to inquire as to the vessel's registry are, therefore, without merit.[2]

Finally, in Defendant Gruezo's Motion, without citing any case or legal authority, he argued that venue is improper in the Southern District of Florida because the only authorized venue for his prosecution under § 70504(b) would be the Southern District of California, where he first entered the country, or the District of Columbia. Mot. at 4. Magistrate Judge Louis did not address this issue in the R&R. *See generally* R&R. However, the Court notes that Defendant Gruezo's argument as to venue is entirely without merit given that the MDLEA states: "if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district, [the Defendant] may be tried in any district." 46 U.S.C. § 70504(b)(2). Here, the offense was committed on the high seas, outside the jurisdiction of any State or district, and venue is therefore proper in the Southern District of Florida. *Id*.

---

[2] To this point, the only subsection of § 70502(d)(1) that envisions a "request of an officer of the United States" is § 70502(d)(1)(B). Thus, it would be a mistake to interpret §§ 70502(d)(1)(A) and (d)(1)(C), which reference claims of registry but not nationality, to require an officer to make a claim of registry because those aspects of the statute do not involve a request of an officer and rather relate to circumstances where the master or individual in charge make a claim of registry, in general. § 70502(d)(1).

Accordingly, UPON CONSIDERATION of the Motion, the R&R, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. Magistrate Judge Louis's R&R (ECF No. 89) is ADOPTED;

2. Defendant Gruezo's Objections (ECF No. 93) are OVERRULED; and

3. Defendant Gruezo's Motion to Dismiss for Lack of Jurisdiction (ECF No. 51) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this *18th* day of January, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record